IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JAMES L. LEMMONS,

        Plaintiff,


        vs.                Case No. 09-1232-JTM


EVCON INDUSTRIES, INC., ET. AL,

        Defendants.



MEMORANDUM AND ORDER

This is a diversity action involving the application and interpretation of the Kansas Workers

Compensation Act (KWCA). Plaintiff brought suit alleging premises liability against defendants.

Defendant's Motion for Summary Judgment (Dkt. No. 58) and Plaintiff's Motion to Partially Strike

Defendant's Reply (Dkt. No. 66) are before the court. As provided below, the court grants the

defendant's motion and denies the plaintiff's motion.



**I. Findings of Fact**

The following facts are uncontroverted for purposes of this motion.

Defendant, York International Corporation (York) manufactures and sells HVAC equipment

at several locations including the Wichita facility at issue here. Plaintiff, James L. Lemmons, claims

he was injured when he fell into a hole covered by a grate in the parking lot while attempting to

hook up a loaded trailer. At the time of the accident, Lemmons was employed by Ryder as a yard

driver. York and Ryder contracted for Ryder to provide freight transportation, hauling, and other

delivery services for York at its Wichita facility. Lemmons was a full time Ryder yard driver and worked exclusively at the York facility. York contracted with other trucking companies to deliver its products to its distributors.

York's Wichita plant is nearly a mile long. The plant has at least 28 separate buildings, each of which serves a distinct function in York's manufacturing operation. The nature of this business and the size of the plant requires York to have yard trucks operating during business hours to transport products at different stages of the manufacturing process from one part of the plant to another. This type of intra-facility transport is known as "yard shuttling." Without yard shuttling, York would be unable to manufacture, assemble, prepare for distribution, or sell any completed HVAC equipment made at the Wichita facility.

The contract between York and Ryder obligated Ryder to provide trucks and drivers on a full time basis to engage in yard shuttling at the plant. Further, it required Ryder to "accept and shuttle the Commodities promptly and efficiently at [York's] discretion." Dkt. No. 59, Ex. C., para. 10. Ryder's yard shuttling services were limited to the Wichita plant. York's other HVAC manufacturing plants did not use third party yard-shuttling providers. York's other facilities located in Norman, Oklahoma and Apodaca, Mexico use their own employees for such work. In fact, prior to hiring Ryder, York used its own employees for yard shuttling in Wichita.

Under the contract, Ryder agreed to comply with all applicable workers compensation laws and agreed to provide workers compensation and employer's liability insurance for its employees working at York. The cost of this insurance was factored into the price York paid Ryder for yard shuttling services. York also paid Ryder an hourly wage for Lemmons's services, and Ryder paid Lemmons directly.

Like all other Ryder drivers at the York facility, Lemmons followed orders from York employees or representatives. York specified the coverage and hours of the yard drivers and defined their tasks. Orders were typically given to a Ryder dispatcher who has a permanent office at the York plant. The dispatcher relayed the orders directly to the drivers, including Lemmons. However, it was not uncommon for York employees or representatives to directly contact or instruct Ryder yard drivers to perform certain tasks. York did not have the power to fire plaintiff, but it did have discretion to remove any Ryder employee, including plaintiff, from the facility if it chose to do so.

On May 11, 2009, plaintiff filed his Original Petition in state court against York. He then filed an essentially identical Amended Petition acknowledging his claim was brought on his own behalf as well as the workers compensation carrier who paid plaintiff's workers compensation benefits. Additionally, plaintiff sued Johnson Controls, Inc., (York's parent company) and Evcon Industries, Inc. Evcon is a prior subsidiary of York that held title to the York facility at the time of the alleged injury. Both Johnson and Evcon have been voluntarily dismissed by plaintiff. *See* Dkt. No. 5. In their Stipulation and Order of Dismissal, the parties agreed to the following things:

> WHEREUPON, pursuant to K.S.A 60-241(a)(1)(ii), the parties to this action stipulate to dismiss Plaintiff's claims against defendants Evcon Industries, Inc., and Johnson Controls, Inc. without prejudice. *The parties further stipulate that on July 28, 2007, defendant Evcon Industries. Inc. was the owner of the real property that is at issue in Plaintiff's Petition according to the records of the Register of Deeds,* but that Evcon, Industries, Inc. was subsequently merged into Evcon Holdings, Inc. later that year. The same day, Evcon Holdings, Inc. was then merged into York International Corporation. Thus, Evcon Industries, Inc. would not be a necessary defendant in this action. *The parties further stipulate that as a result of the merger, should there be any liability attributable to Evcon Industries, Inc. in this case for events that occurred on the real property at issue in this litigation previously owned by it, that York International Corporation has assumed such liability as a result of the mergers detailed above.* . . .
>
> WHEREUPON, having received and examined the record and having been fully advised of the premises herein, the Court finds that the defendants, Evcon Industries, Inc. and Johnson Controls, Inc. should be dismissed without prejudice.

> IT IS THEREFORE ORDERED that defendants Evcon Industries, Inc. and
> Johnson Controls, Inc. are dismissed from this action without prejudice.

Dkt. No. 5 (emphasis added). On July 28, 2009, York removed the case to this court on grounds of diversity and filed an Answer and an Amended Answer explicitly raising the exclusive remedy provision of the Kansas Workers Compensation Act as a defense.

## II. Conclusions of Law

### A. Defendant's Motion for Summary Judgment (Dkt. No. 58)

#### 1. Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." *Id.* Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove [nonmovant's] claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987) (alterations added).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Id.* at 250-51. Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*).

Finally, the court reminds the parties that summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is an important procedural vehicle "designed to secure the just, speedy and inexpensive determination of every action." *Id.* One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Id.*

2. Exclusive Remedy Provision of the Kansas Workers Compensation Act

First, defendant argues it is entitled to summary judgment because plaintiff's suit is barred by the exclusive remedy provisions of the KWCA. Generally, under Kansas law, an employee may not sue his employer for injuries sustained by the employee in the course of employment. *See* KAN. STAT. ANN. § 44-501(b) (2010). Section 44-501(b) provides:

> Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer.

*Id.* "The remedy provided in the Kansas Workers Compensation Act is exclusive and a worker may not maintain a common-law action for damages founded upon negligence against a party from whom he or she could have recovered compensation from that employer under the Act." *Robinett v. Haskell Co.*, 270 Kan. 95, 97, 12 P.3d 411, 414 (2000). This protection from suit extends beyond immediate employers and covers "statutory employers" and "special employers." *Id.* at 98, 12 P.3d at 414; *Bright v. Cargill, Inc.*, 251 Kan. 387, 393-94, 837 P.2d 348, 356 (1992). Because York was not Lemmons's immediate employer, York must be either classified as a statutory employer or a special employer in order to avoid liability under the exclusive remedy provision.

The Kansas Supreme Court has emphasized the provisions of the KWCA are to be "liberally construed for the purpose of bringing a worker under the Act whether or not desirable for the specific individual's circumstances." *Bright*, 251 Kan. at 393, 837 P.2d at 355 (citing *Zehring v. Wickham*, 232 Kan. 704, 706, 658 P.2d 1004 (1983)). The provisions of the act apply impartially to both employers and employees. KAN. STAT. ANN. § 44-501(g) (2010).

*a. Statutory Employer*

6

Kan. Stat. Ann. § 44-503(a), extends the KWCA to certain individuals or entities who are not the immediate employers of the injured workers, but are statutory employers.[1] The Kansas Supreme Court has provided two separate tests—known as the *Hanna* tests—for determining whether an employer is a statutory employer. *Bright*, 251 Kan. at 393-94, 837 P.2d at 356. An employer is the statutory employer of the worker if either of the following things are met:

> "(1) [I]s the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?"

*Id.* (quoting *Hanna v. CRA, Inc.*, 196 Kan. 156, 159-60, 409 P.2d 786 (1966)). The two questions may overlap. *Id.* at 397, 837 P.2d at 358. If either of the above tests is answered with a "yes," the work being done is part of the principal's trade or business and the employee's sole remedy is under the KWCA. *Id.* at 394, 837 P.2d at 356.

---

[1]Kan. Stat. Ann. § 44-503(a) provides:

Where any person (in this section referred to as principal) undertakes to execute any work which is a part of the principal's trade or business or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any worker employed in the execution of the work any compensation under the workers compensation act which the principal would have been liable to pay if that worker had been immediately employed by the principal; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workers compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the worker under the employer by whom the worker is immediately employed. For the purposes of this subsection, a worker shall not include an individual who is a self-employed subcontractor.

*Id.* The Kansas Supreme Court has also held that "in passing K.S.A. 1999 Supp. 44-503, the legislature did not intend to subject principal contractors to tort liability for injuries to the employees of subcontractors, even where the principal contractor is not liable for workers compensation benefits because such coverage is secured by the subcontractor." *Robinett v. Haskell Co.*, 270 Kan. 95, 108, 12 P.3d 411, 420 (2000).

First, the yard shuttling services provided by plaintiff were inherent in and an integral part of York's trade or business. Several courts applying Kan. Stat. Ann. § 44-503 have held a defendant was a statutory employer of a plaintiff in similar circumstances. *See, e.g.*, *Minner v. Dayton Hudson Corp.*, 33 Fed. App'x 954, 956-57 (10th Cir. 2002) (holding Dayton Hudson Corporation was the statutory employer of truck driver delivering periodicals to a Target store); *Chermok v. Wal-Mart Stores, Inc.*, 1999 WL 181251, at *2 (10th Cir. 1999) (holding Walmart was statutory employer of truck driver plaintiff engaged in unloading merchandise because the work was "necessarily inherent in and an integral part of defendant's business of selling merchandise");*Watson v. W.S. Dickey Clay Mfg. Co.*, 202 Kan. 366, 377, 450 P.2d 10, 19 (1969) (holding plaintiff truck driver injured while loading clay at defendant's manufacturing plant was the statutory employee of defendant because the loading work was necessarily inherent in and an integral part of defendant's business).

In this case, the uncontroverted facts establish that: (1) the York plant is a large facility consisting of no less than 28 separate buildings extending nearly a mile in length; (2) the nature of York's manufacturing business requires it constantly to shuttle parts and products from one area of the plant to another; and, (3) without such services York would be unable to manufacture, assemble, prepare for distribution, or sell any HVAC equipment from its Wichita facility. The facts further support defendant's argument because plaintiff worked exclusively at the York facility and his sole job was to transport products and parts within that facility, highlighting the fundamental nature of yard shuttling services for York's business. Thus, defendant meets the first *Hanna* test.

Defendant also meets the second *Hanna* test—whether the work being performed by the independent contractor and the injured employee is such as would ordinarily have been done by the employees of the principal. *See Bright*, 251 Kan. at 393-94, 837 P.2d at 356. The yard shuttling

services were not specialized services which York employees could not perform. *See Woods v. Cessna Aircraft Co.*, 220 Kan. 479, 486 553 P.2d 900, 906 (1976) (reversing summary judgment and finding genuine issues of material fact remained concerning whether Cessna employees had previously constructed hangars or that it had the necessary skilled employees to complete the job); *Hanna*, 196 Kan. at 162-63, 409 P.2d at 791-92 (holding question of material fact precluded summary judgment regarding whether constructing a building, during which the injury occurred, ordinarily would have been performed by employees of the defendant). As noted above, before York entered into a contract for services with Ryder (plaintiff's immediate employer) York employees performed the yard shuttling services now performed by plaintiff. *See Robinson v. Flynn's Ferry Serv., Inc.*, 6 Kan. App.2d 709, 713, 633 P.2d 1166, 1169-70 (1981) (holding defendant was statutory employer of plaintiff because 96% of duties performed by plaintiff were done by defendant's own employees); *Zehring*, 232 Kan. at 709, 658 P.2d at 1007-08 (holding defendant was statutory employer because it had constructed buildings in the past and the construction of a building to house a large tempering oven would generally be performed by defendant's employees). That defendant no longer performs the work at issue is of no moment. Additionally, York utilizes its own employees to perform yard shuttling services at its other manufacturing plants in Apodaca, Mexico and Norman, Oklahoma. Plaintiff does not contest this point.

Defendant has met both *Hanna* tests, and none of the underlying facts are disputed. Thus, the court finds defendant was the statutory employer of plaintiff. Thus, plaintiff is precluded under the KWCA from pursuing his negligence action against York. His sole remedy against York is under the act.

*b. Special Employer*

York also argues it is entitled to immunity as a special employer. Although not specifically

defined in the KWCA, "[a] special employee becomes the servant of the special employer and

assumes the same position as a regular employee under the Workers Compensation Act." *Scott v.*

*Altmar, Inc.*, 272 Kan. 1280, 1283, 38 P.3d 673, 676 (2002). A special employer/employee

relationship exists if three things are satisfied:

> (a) the employee has made a contract of hire, express or implied, with the
> second employer;
> (b) the work being done is essentially that of the second employer; and
> (c) the second employer has the right to control the details of the work.

*Id.* 272 Kan. at 1284, 38 P.3d at 676 (quoting 3 Larson's Workers' Compensation Law §

67.01[1], p. 67-2). However, the focal point of the analysis is "whether the employer has the right

to control and direct the particular activity as a consequence of which the injury occurred." *Id.* 272

Kan. at 1284, 38 P.3d at 677.

Turning to the first element, the question is whether an express or implied contract existed

between plaintiff and York. The parties did not have an express contract, however, the actions of

the parties may create an implied contract. A key factor in determining the existence of an implied

contract is whether plaintiff consented to control by defendant. *See Cuiksa v. Hallmark Hall of Fame*

*Prods., Inc.*, 252 F. Supp.2d 1166, 1172 (D. Kan. 2003) (citing *Hardman v. Specialty Servs.*, 177

F.3d 921, 925 (10th Cir. 1999)). Courts generally find implied contracts when a special employer

controls a plaintiff working for a temporary employment agency. *Id.* Additionally, courts often find

implied contracts in instances involving the loading and unloading of goods when the employee

submits to the direction of the special employer. *Id.* (citing *Bright v. Bragg*, 175 Kan. 404, 264 P.2d

494 (1953), *overruled on other grounds by Bendure v. Great Lakes Pipe Line Co.*, 199 Kan. 696, 433 P.2d 558 (1967)).

Here, plaintiff's immediate employer, Ryder, entered into a contract with York to provide yard shuttling services. Plaintiff was an immediate employee of Ryder performing work at the York facility pursuant to that contract at the time of his injury. Plaintiff arrived at the York facility each day and performed work at the complete direction of defendant and its employees or representatives. Generally, one of defendant's employees gave an order to a Ryder dispatcher who relayed it to employees such as plaintiff. But, it was not uncommon for defendant to give direct orders to Ryder employees, including plaintiff. The authority defendant retained over Ryder's employees and plaintiff extended to all aspect of the yard shuttling activities. By his own actions, plaintiff made an implied contract of hire with defendant for purposes of the special employer doctrine. *See Scott*, 272 Kan. at 1286-87, 38 P.3d at 678 (finding plaintiff had an implied contract of employment with defendant because plaintiff performed work at defendant's business at defendant's complete direction).

Under the second element, the work plaintiff was doing must have been the work of defendant. At the time of the injury, plaintiff was hooking up a loaded trailer and plaintiff has not challenged defendant's assertion that plaintiff was performing work in the course of and in furtherance of his job duties. The yard shuttling work plaintiff performed, including the act of hooking up a trailer, was essentially the work of defendant. Defendant had previously used its own employees to perform the yard shuttling duties at the Wichita facility and currently uses its own employees to perform such services at its other plants. Thus, it is really not in dispute that plaintiff was performing defendant's work.

The last element is who controlled plaintiff's work. The factors courts look at are "where, when and how the work was to be performed and also at whether the employer could discharge the employee for unsatisfactory performance." *Hardman*, 177 F.3d at 925 (internal citations omitted). Here, plaintiff performed the work entirely at York's Wichita facility during the regular working hours of the plant. As mentioned previously, York employees or representatives directed plaintiff to perform his work. While York did not have the authority to fire plaintiff, it did have authority to prohibit plaintiff from working for Ryder at York's Wichita plant. All these facts, and those previously analyzed above, show defendant controlled plaintiff's work.

Defendant controlled all aspects of plaintiff's work, the work performed was essentially that performed by defendant, and plaintiff impliedly entered into a contract with defendant. Thus, defendant is also a special employer immune from plaintiff's negligence claim.

### 3. Applicability of *Dillard v. Strecker* and *Herrell v. National Beef Packaging Company, L.L.C.*

In addition to the exclusive-remedy provision of the Workers Compensation Act, defendant also argues plaintiff's suit is barred by *Dillard v. Strecker* and *Herrell v. National Beef Packing Company, L.L.C. See Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994); *Herrell v. Nat'l Beef Packing Co., L.L.C.*, 41 Kan. App.2d 302, 202 P.3d 691 (2009). Plaintiff contends *Dillard* and *Herrell* support his position, and that under those cases, defendant is liable to him for its duties as an owner/occupant of the property.

Plaintiff's attempt to avoid summary judgment on York's liabilities as an owner/occupier fall flat. As analyzed above, defendant York is entitled to summary judgment because it is the statutory and special employer of plaintiff. As such, it is entitled to immunity from plaintiff's

premises liability case against it. Had York not been plaintiff's statutory or special employer, the KWCA would not immunize York from plaintiff's premises liability suit. *See Cuiksa*, 252 F. Supp.2d at 1171-72 (stating, "[i]f the employment relationship meets the above [special employer] test and he is found to be a lent employee, the employer is a special employer and protected by the exclusive remedy bar of the KWCA. If the test is not met [Kan. Stat. Ann. § 44-504(a)] applies") (alterations added). KAN. STAT. ANN. § 44-504(a) states:

> When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.

KAN. STAT. ANN. § 44-504(a) (2010). York is entitled to immunity from suit as a statutory and special employer, and plaintiff's premises liability suit against York must fail.

In his Response, plaintiff principally argues York is liable because Evcon was the landowner and owed plaintiff a duty of reasonable care. In its Reply, defendant argues York is also entitled to summary judgment under *Dillard* and *Herrell* for any of Evcon's liabilities it assumed. Objecting to the Reply, plaintiff filed a Motion to Partially Strike Defendant's Reply (Dkt. No. 66).

### a. Plaintiff's Motion to Partially Strike Defendant's Reply (Dkt. No. 66)

Plaintiff moves to strike portions of defendant's Reply regarding any requests for summary judgment based on Evcon's liabilities and Section IV.B of the Reply. Plaintiff argues York did not move for summary judgment on Evcon's liability in its initial summary judgment motion, thus, it cannot do so in its Reply. Plaintiff contends any argument relating to Evcon's liability is a new

issue, which was not addressed in the original summary judgment motion and is a matter still materially at issue in this case. Because the Local Rules do not specifically authorize surreplies, plaintiff filed this motion. York contends such a motion is procedurally deficient and substantively flawed.

As an initial matter, Fed. R. Civ. P. 12(f) allows the court to strike material from *pleadings*. Rule 12(f) provides:

> **Motion to Strike**. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f). A reply memorandum following a plaintiff's memorandum in opposition to a motion for summary judgment is not a pleading. *See* FED. R. CIV. P. 7(a) (pleadings include: a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, an third-party complaint, an answer to a third-party complaint, and if the court orders, a reply to an answer). The Federal Rules of Civil Procedure do not provide for motions to strike motions, memoranda, responses, or replies. *See Fisherman Surgical Instruments, L.L.C. v. Tri-Anim Health Servs.*, No. 06-2082, 2007 WL 2100119, at *1 (D. Kan. July 20, 2007) (citing *Searcy v. Soc. Sec. Admin.*, 1992 WL 43490 at *2 (10th Cir. 1992); *Commodity Futures Trading Comm'n v. Purser*, No. 00-CV-622-TS, 2006 WL 288420, at *1 (D. Utah 2006); *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 230 F.R.D. 657, 660 (D.N.M. 2005)). Thus, plaintiff's motion is denied.

It generally is also true that the court will not consider new arguments as a basis for summary judgment raised for the first time in a reply brief. *See Thurston v. Page*, 931 F. Supp. 765, 768 (D. Kan. 1996) ("The court will not consider the new argument presented in defendant's reply brief

when that issue was not raised in the initial motion for summary judgment."). The Local Rules do not provide for the filing of a surreply, but they do not prohibit it either. "'[I]f the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to those new materials.'" *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (quoting *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998)). However, the argument raised by defendant in its Reply was not a new argument; it was a direct response to arguments plaintiff made in his Response, where plaintiff argued defendant was liable as an owner/occupier of the property because Evcon was the landowner of the property. Plaintiff specifically addressed Evcon's liability as a landowner, asserting York assumed any liability attributable to Evcon Industries, Inc. in this case for events that occurred on the real property. Therefore, York's liability for Evcon's ownership has been adequately addressed in the briefing. Nevertheless, the court granted plaintiff an opportunity to file a surreply. See Dkt. No. 74. Because the issue has been adequately addressed by both parties, plaintiff's Motion to Partially Strike Defendant's Reply (Dkt. No. 66) is denied.

### b. York's Liability for Evcon's Status as the Landowner

On the date of plaintiff's fall, July 28, 2007, Evcon owned the property on which the alleged injury occurred. In the Original Complaint, plaintiff sued Evcon and York. However, after the accident Evcon merged into York. Further, on August 8, 2009, the parties stipulated "that as a result of the merger, should there be any liability attributable to Evcon Industries, Inc. in this case for events that occurred on the real property at issue in this litigation previously owned by it, that York International Corporation *has assumed such liability as a result of the mergers detailed above*." Dkt.

No. 5, pg. 2 (emphasis added). Therefore, York assumed any liability attributable to Evcon. *Dillard* and *Herrell* guide the decision on Evcon/York's[2] liability as a landowner.

"Generally, an occupier of land owes a duty of reasonable care under the circumstances to all entrants on the property who are present with the owner or occupier's consent." *Herrell*, 41 Kan. App.2d at 307, 202 P.3d at 696 (citing *Jones v. Hansen*, 254 Kan. 499, 509, 867 P.2d 303 (1994)). Plaintiff's theory of liability against Evcon as a landowner is that it "faile[d] to maintain the premises in a reasonably safe condition, faile[d] to repair the surface of the facility, faile[d] to warn the plaintiff of the dangerous surface in the parking lot, and in such other manner as may be revealed by the evidence." Dkt. No. 1, Plaintiff's Amended Petition, pg. 2 (alterations added). In *Dillard*, the Kansas Supreme Court held this general duty of reasonable care did not—based on the specific facts of that case—apply to an employee of an independent contractor covered by workers compensation insurance. 255 Kan. at 726-27, 877 P.2d at 385-86. *Dillard* was a premises liability case in which the Catholic Archdiocese of Kansas City contracted with A.L. Huber for construction work on a church and school. A.L. Huber in turn contracted with P & S Masonry for the masonry work. During the construction, plaintiff Lee Dillard, a P & S employee, was seriously injured when a masonry wall collapsed crushing him. Plaintiff was covered by workers compensation but sued the Catholic Archdiocese alleging it had a statutory, nondelgable duty to inspect the masonry wall, that it breached that duty, and was liable to plaintiff for his injuries. Plaintiff further alleged the church was vicariously liable for the subcontractor's negligence because he (plaintiff) was performing an inherently dangerous activity. The church asserted the exclusive remedy provision of the KWCA. After thorough analysis, the court ultimately concluded:

---

[2]For the remainder of this Order, the court will refer to Evcon and its liability as a landowner. As explained above, this discussion applies to York's liability as it assumed all Evcon's liabilities in this respect. *See* Dkt. No. 5.

(1) A landowner is not liable to an employee of an independent contractor covered by workers compensation for injury sustained as a result of the breach of a nondelegable duty imposed upon the landowner by statute or ordinance.

(2) The inherently dangerous activity exception to the nonliability of a landowner does not extend to employees of an independent contractor covered by workers compensation.

(3) Our decision is limited to the facts herein and to those instances where the injured employee of an independent contractor covered by workers compensation seeks to hold a landowner liable under the theories discussed in the opinion.

*Id.* In reaching this conclusion, the *Dillard* court undertook an extensive analysis of the policy reasons underlying its decision and other courts reaching similar decisions. *See* 255 Kan. at 710-25, 877 P.2d at 375-85; *see also Matteuzzi v. Columbus P'ship, L.P.*, 866 S.W.2d 128 (Mo. 1993); *Zueck v. Oppenheimer Gateway Props., Inc.*, 809 S.W.2d 384 (Mo. 1991); *Parker v. Neighborhood Theaters, Inc.*, 76 Md. App. 590, 547 A.2d 1080 (1988); *Ray v. Schneider*, 16 Conn. App. 660, 548 A.2d 461 (1988); *Stockwell v. Parker Drilling Co., Inc.*, 733 P.2d 1029 (Wyo. 1987); *Tauscher v. Puget Sound Power & Light Co.*, 96 Wash.2d 274, 635 P.2d 426 (1981). Specifically, the court listed nine policy reasons supporting its decision:

(1) The landowner should not have greater liability to an employee of an independent contractor than the liability of the contractor to that employee.

(2) The landowner should not have greater liability to the employees of an independent contractor than the landowner has to the landowner's own employees

(3) Liability on the part of the landowner would encourage the landowner to use the landowner's less experienced employees rather than an experienced contractor.

(4) Employees of an independent contractor, and their dependents, are protected under the provisions of the workers compensation statutes.

(5) Workers in inherently dangerous jobs are fully aware of the dangers involved and receive compensation accordingly.

(6) Landowners may not have expert knowledge of inherently dangerous work, the risks involved, and methods of avoiding such risks that an independent contractor engaged in such activity possesses.

(7) Liability on the part of the landowner would create a class of employees, those of an independent contractor, with greater rights than the employees of the landowner for doing the same work.

(8) To allow an employee of an independent contractor covered by workers compensation to invoke the inherently dangerous activity doctrine would (a) reward

landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (b) increase the risks to innocent third parties, and (c) punish landowners who seek expert assistance in an effort to avoid liability for injury.

(9) A landowner who engages the services of an independent contractor pays directly or indirectly for the compensation coverage when the landowner contracts with the independent contractor.

*Dillard*, 255 Kan. at 725-26, 877 P.2d at 385.

To the extent defendant argues *Dillard* alone bars plaintiff's suit, it is incorrect. By its explicit restrictive language *Dillard* does not apply to the facts of this case. *See* 255 Kan. at 726-27, 877 P.2d at 385-86.[3] However, a recent Kansas Court of Appeals decision reexamined and extended *Dillard* to a situation not involving the specific theories of liability asserted in *Dillard*. *See Herrell*, 41 Kan. App.2d 302, 202 P.3d 691. In *Herrell*, plaintiff was injured when she stepped into a hole in the concrete floor of the landowner's (National Beef Packing Company's) plant. National Beef contracted with J-A-G Construction Company to act as a general contractor for the construction of a new roof at its Dodge City rendering facility. J-A-G then contracted with Terracon Consultant's Inc., to test the soil in the holes dug for concrete pillars meant to support the new roof. Plaintiff collected workers compensation from Terracon and also filed a separate negligence action against National Beef alleging it was negligent in maintaining and failing to warn of a dangerous condition. National Beef moved for summary judgment claiming, among other things, that it was not liable under the *Dillard* rule. After undertaking an extensive analysis of *Dillard* and its policy rationales, the *Herrell* court held that while not directly applicable to the facts of the case, the policy decisions

---

[3]This court, prior to the Kansas Court of Appeals's decision in *Herrell v. National Beef Packing Company*, had specifically restricted the *Dillard* holding to its specific facts, refusing to extend it to other similar factual situations. *See Cuiksa v. Hallmark Hall of Fame Prods., Inc.*, 252 F. Supp.2d 1166, 1174 (D. Kan. 2003); *Martin v. Mapco Ammonia Pipeline, Inc.*, Nos. CIV.A. 93-2218, CIV.A. 93-2303, 1994 WL 409591, at *7 (D. Kan. July 27, 1994).

announced in *Dillard* "would apply to bar a cause of action against a landowner under Restatement (Second) of Torts § 343, except in cases where the landowner exerts sufficient control over the details of the work." *Herrell*, 41 Kan. App.2d at 322, 202 P.3d at 704.[4] The court recognized the key difference between *Dillard* and *Herrell*—plaintiff seeking to recover for defendant landowner's negligence in creating, maintaining, or failing to warn of a dangerous condition (*Herrell*), rather than an independent contractor's negligence (*Dillard*). Nevertheless, the *Herrell* court held the policy reasons supporting *Dillard* applied with equal force to its situation. *See id.* at 315, 202 P.3d at 700-701 ("Indeed, if just the policy reasons set out in *Dillard* are considered, National Beef's position would be correct. The policy considerations support a conclusion that an employee of an independent contractor covered by workers compensation insurance cannot recover in negligence from the landowner, regardless of the employee's underlying theory of the landowner's liability.").

Specifically, the court stated:

> Second, leading to our Supreme Court's holding in *Dillard*, our Supreme Court reasoned that workers compensation statutes shield independent contractors who pay workers compensation insurance premiums from further tort liability for work-related injuries to their employees. Moreover, the court reasoned that landowners who employ independent contractors and who indirectly pay the cost of such insurance coverage should be similarly shielded from claims of contractors' employees that occur from the contract work. Nevertheless, under the dissent's reasoning, landowners who employ independent contractors would be exposed to a

---

[4]The Restatement (Second) of Torts § 343 provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Id.*

greater cost than if they had used their own employees to perform the work. This result would be unfair under the facts of this case. As a result, we determine that the policy reasons advanced in *Dillard* would bar the claims brought by Herrell.

*Id.* at 324, 202 P.3d at 706.

The pertinent facts of this case, regarding Evcon's liability as a landowner, are nearly on all fours with the facts of *Herrell*. Like National Beef, Evcon did not contract with plaintiff and did not control plaintiff's actions by directing his job duties. Further, the injury alleged here, that plaintiff fell at the York facility, is potentially attributable to Evcon's negligence as a landowner not Ryder's negligence as an independent contractor. As such, defendant is entitled to summary judgment under *Herrell* unless Evcon exerted sufficient control over plaintiff's work. As the court has explained, York controlled nearly every aspect of plaintiff's work. Evcon was a passive landowner exerting no control over plaintiff's work. Thus, York is entitled to summary judgment as Evcon is not liable under *Herrell*. *See* 41 Kan. App.2d at 323-24, 202 P.3d at 705-06 (stating landowner was not liable because it retained no control over the work resulting in injury).

The argument presented by plaintiff in his Surreply does not change the result. Basically, plaintiff argues that York and Evcon are separate entities and because they are separate, York may still be liable to plaintiff based on Evcon's status as a landowner even if York is not liable to plaintiff for its own actions. Plaintiff claims Evcon exercised control over the property on the day plaintiff was injured, thus, York is responsible for any of Evcon's negligent acts. This argument, however, improperly focuses on whether Evcon exercised control over the property as an independent landowner rather than whether Evcon exerted sufficient control over plaintiff's work. Under *Herrell*, the latter inquiry is the only one of consequence. *See* 41 Kan. App.2d at 323-24, 202

P.3d at 705-06. Because plaintiff does not allege Evcon exerted any control over his work, York is not liable to plaintiff for any of Evcon's duties to plaintiff as a landowner.

This court also finds many of the policy reasons supporting the Kansas Supreme Court's decision in *Dillard* and the Kansas Court of Appeals's decision in *Herrell* are present in this case. The landowner should not have greater liability to employees of an independent contractor than the liability of the contractor to his employee. And the landowner should not have greater liability to employees of an independent contractor than it has to its own employees. Additionally, the plaintiff here is covered under the workers compensation statutes.[5]

## III. Conclusion

After examining the parties' briefs and accompanying evidentiary support, the court finds there is no genuine issue of material fact and defendant is entitled to summary judgment. York, as plaintiff's statutory and special employer is entitled to immunity for its own liabilities under Kan. Stat. Ann. § 501. Additionally, York is entitled to summary judgment on Evcon's liabilities under *Herrell*, which precludes premises liability actions against landowners when the landowner exerted no control over the plaintiff and the plaintiff is covered by workers compensation. The court also denies plaintiff's Motion to Partially Strike Defendant's Reply (Dkt. No. 66).

IT IS ACCORDINGLY ORDERED this 13th day of July 2011, that Defendant's Motion for Summary Judgment (Dkt. No. 58) is granted.

IT IS FURTHER ORDERED that plaintiff's Motion to Partially Strike Defendant's Reply (Dkt. No. 66) is denied.

---

[5]The court notes that all the policy reasons enumerated in *Dillard* are not directly applicable to this case as it does not involve an inherently dangerous condition.

IT IS FURTHER ORDERED that oral argument on this matter, currently set for August 8, 2011, is hereby cancelled.


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE